UNITED STATES of America, Plaintiff

v.

**Heriberto Mota CEDENO, Defendant.**

**Criminal No. 05–102 (JAG).**

United States District Court,
D. Puerto Rico.

April 29, 2008.

Jeanette Mercado–Rios, United States Attorney's Office, San Juan, PR, for Plaintiff.

Ernesto Reyes–Blassino, ERB Law Office, Guaynabo, PR, for Defendants.

## MEMORANDUM AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court are several Motions to Withdraw Plea of Guilty and to Appoint New Counsel filed by Defendant Heriberto Mota Cedeno ("Defendant"). (Docket Nos. 470, 472, and 474). Furthermore, there is a pending motion to subpoena Roberto de los Santos, a cooperating witness in the case at bar. (Docket No. 471). For the reasons set forth below, the Court **DENIES** Defendant's Motions.

## FACTUAL AND PROCEDURAL BACKGROUND

In the case at bar, the parties reached a plea agreement. As a result, on January 11, 2008, Defendant pled guilty to Count One of the Indictment, which charged him with violating 18 U.S.C. § 1956(h), conspiracy to commit money laundering. In the change of plea hearing, Defendant also pled guilty to committing an overt act in furtherance of the conspiracy. Namely, that on or about February 18, 2004, he delivered $ 198,550 in U.S. currency to a person known to the grand jury for later transfer and payment to Colombian narcotic owners. (Docket No. 455). Sentencing was set for April 18, 2008, however, said hearing was vacated due to Defendant's pending motions. Defendant has filed three motions requesting to withdraw his guilty plea and that new counsel be appointed. In support of this request, Defendant contends that his current counsel misrepresented facts to him that induced him not to knowingly enter his guilty plea. Regarding the aforementioned overt act to which Defendant pled guilty, Plaintiff alleges that he did not know what was in the bag or where it came from. (Docket Nos. 470, 472, and 474). Defendant further requests that he be allowed to subpoena Roberto de los Santos. (Docket No. 471).

On April 14, 2008, the Government responded to Defendant's Motions. The Government opposed Defendant's request to withdraw his guilty plea. In addition, the Government informed the Court that Roberto de los Santos was murdered in the Dominican Republic. (Docket No. 479). As such, Defendant's request to subpoena Roberto De los Santos is not possible.

## DISCUSSION

1. *Withdrawal of Guilty Plea*

Defendant argues that he should be permitted to withdraw his guilty plea because he did not knowingly enter that plea. He claims he did not understand its consequences nor the acts that the Government alleges he took part in.

"[A] defendant does not have an absolute right to withdraw a guilty plea." *United States v. Negron–Narvaez*, 403 F.3d 33, 36 (1st Cir.2005). However, the court should permit a motion to withdraw if the defendant offers "a fair and just reason." *United States v. Sousa*, 468 F.3d 42, 46 (1st Cir.2006) (citing Fed.R.Crim.P.

11(d)(2)(B)). To determine if there is "a fair and just reason" the court most consider the following factors: "whether the plea was voluntary, intelligent, knowing, and complied with Rule 11; the force of the reasons offered by the defendant; whether there is a serious claim of actual innocence; the timing of the motion; and any countervailing prejudice to the government if the defendant is allowed to withdraw his plea." *Id.*

█ Defendant's proffered reason for his motion to withdraw is that his plea was not knowing and intelligent. It is well settled law that a guilty plea must be knowing and voluntary in order to satisfy the strictures of the Constitution. *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *United States v. Jimenez*, 512 F.3d 1, 3 (1st Cir. 2007). A defendant knowingly and voluntarily enters a guilty plea when he understands the charges against him and the spectrum of possible penalties to which an admission of guilt will expose him. *Jimenez*, 512 F.3d at 3; *see also* Fed.R.Crim.P. 11(b)(1).

█ A review of the Change of Plea Hearing Transcript corroborates that Defendant knowingly entered into his guilty plea. In the Rule 11 hearing, the Court conducted a thorough inquiry into Defendant's understanding of the offenses charged. The Court began by informing Defendant that it was important that his plea of guilty be voluntary and knowingly: "THE COURT: Now, sir, I have your petition to enter a plea of guilty. Before I accept this, I have to make an independent determination that you are competent and that your petition is a completely voluntary one. Do you understand this? THE DEFENDANT: Yes."

The Court then explained to Defendant that by entering a plea of guilty he was waiving his right to trial and the other rights associated with a trial. Afterward, the Court asked the Government to provide a summary of the plea agreement. The summary included the offense that Defendant was charged with. Moreover, the Government explained the possible sentence Defendant was facing. This Court then made sure Defendant had understood what the Government had explained:

> THE COURT: And you understand what we just discussed here, that at the time of sentencing, I will decide whether you are going to have against you an enhancement of six points or not, depending upon whether you had knowledge or not that the money came from drug proceeds. Do you understand that?

> THE DEFENDANT: Yes.

> THE COURT: ... And then if I should determine that there is no enhancement for six points, the sentencing recommendation will be 37 months—okay? And if I should determine that there is an enhancement—I mean, the sentence would be 37, and if I should determine that the enhancement does not apply, the sentence recommendation will be 24 months. Do you understand that

> THE DEFENDANT: Yes.

> THE COURT: And all this depends upon what happens when your criminal history is analyzed. If your criminal history is I, this applies. If it is II, III, IV, if it comes up because you may have other convictions, you know, this can go up. Do you understand that?

> THE DEFENDANT: Yes.

> THE COURT: Very well. And, counsel, do you agree with all this?

> MR. REYES: Yes, your Honor. This is what we agreed....

Furthermore, this Court corroborated that Defendant understood the terms of the plea agreement:

THE COURT: ... Now, did you have an opportunity to read and discuss this plea agreement with your counsel before you signed it?

THE DEFENDANT: Yes.

THE COURT: And, counsel, did you explain this agreement to the defendant in Spanish and are you satisfied that he understands it?

MR. REYES: Yes, your Honor.

THE COURT: Now, defendant, do you understand the terms of the plea agreement?

THE DEFENDANT: Yes.

THE COURT: And does the plea agreement represent in its entirety all of your understandings with the Government?

THE DEFENDANT: Yes.

THE COURT: And do you understand that the terms of this plea agreement are merely recommendations to the Court and that I can reject those recommendations without permitting you to withdraw your plea of guilty and impose a sentence that is more severe than you may anticipate?

THE DEFENDANT: Yes.

THE COURT: And do you understand that by entering into this plea agreement, you will have waived or given up your right to appeal all or part of the sentence, provided I sentence you in accordance with the terms of the plea agreement?

THE DEFENDANT: Yes.

The Court also confirmed that Defendant was entering a voluntary guilty plea:

THE COURT: Now, has anyone made any promise or assurance to you of any kind in an effort to induce you to sign the plea agreement in this case?

THE DEFENDANT: No.

THE COURT: Has anyone attempted in any way to force you to sign the plea agreement in this case?

THE DEFENDANT: No.

THE COURT: So you are pleading guilty of your own free will, because you are guilty.

THE DEFENDANT: Yes.

This Court also assured that Plaintiff understood the indictment and the counts he was charged with:

THE COURT: ... Now, sir, we have here a very lengthy document called "Indictment," which I am not going to read because we will be here the whole afternoon, okay? But you are pleading guilty to Count One of that indictment, and I am sure that there are some paragraphs that apply to you specifically in that indictment. I will be reading parts of it. Are you familiar with the terms and conditions of that indictment? Are you familiar with this indictment? Has your attorney explained to you—

THE DEFENDANT: Yes.

THE COURT: —what you are being accused of?

THE DEFENDANT: Yes.

THE COURT: Very well.

The Court then read a summary of the indictment, which included the overt act that Defendant allegedly committed. Namely, that on or about February 18, 2004, he delivered $ 198,550 in U.S. currency to a person known to the grand jury for later transfer and payment to Colombian narcotic owners (the "overt act"). After reading the summary of the Indictment, the Court confirmed that Defendant understood that he was pleading guilty to the offense charged in the Indictment:

THE COURT: So now I ask you: I have read these allegations in the docu-

ment that the Government uses to accuse. Is this what you did—

THE DEFENDANT: Yes.

THE COURT: —and what you are pleading guilty to?

THE DEFENDANT: Yes`

The Court then once again made certain that Defendant understood the consequences of pleading guilty:

THE COURT: Now, I am informing you about the maximum and minimum— you know, the punishment that the law provides for the offense that you are pleading guilty to, okay? And these are—you know, Count One, you may be sentenced to a fine of not more than $500,000, or twice the value of the monetary instrument of funds involved in the transportation, transmission or transfer, whichever is greater, or imprisonment for not more than 20 years, or both, and the Court may impose a term of supervised release in addition to what I have said for at least four years, and there is also a mandatory penalty assessment of $100.

And, of course, since you are an alien, you know, your pleading guilty to this offense will impact your status as an alien within this jurisdiction, and you are—you would be facing deportation proceedings, which could culminate in your being deported from the United States. Now, with regard to any term of supervised release that may be imposed, you are also informed that if you violate the conditions of release, the Court may impose additional time in prison. Now, counsel, have you discussed and explained the terms of supervised release to defendant?

MR. REYES: Yes, your Honor.

THE COURT: And I ask defendant: Do you understand the serious possible consequences of your plea of guilty?

THE DEFENDANT: Yes.

The transcript corroborates that Defendant understood the charges against him and the spectrum of possible penalties to which his admission of guilt exposed him. *Jimenez*, 512 F.3d at 4 ("A defendant's acknowledgment, during a change-of-plea proceeding, that he understands a lucid explanation of his potential sentencing exposure is powerful evidence of the knowing nature of his guilty plea."). Moreover, the transcript demonstrated that Defendant entered a voluntary plea of guilty. Thus, Defendant's guilty plea was voluntary and knowingly. As such, Defendant's proffered reason is not sufficient for this Court to grant his plea withdrawal request.

■ Moreover, Defendant's nine week delay[1] in moving to withdraw his plea counsels against permitting withdrawal. E.g., *United States v. Pagan–Ortega*, 372 F.3d 22, 31 (1st Cir.2004) (stating that two-month lag between plea and motion to withdraw places "it well within the area of vulnerability because of untimeliness"); *United States v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir.1989) (ruling that eight week delay between plea and motion to withdraw weighed against defendant).

Defendant asserts his innocence in his motions. According to Defendant, he did not know what was in the bag when he participated in the alleged overt act. Defendant made that same allegation in the Rule 11 hearing. In said hearing, the Court ascertained that Defendant's claim was that he knew that he committed money laundering when he picked up the bag

---

1. Defendant pled guilty on January 11, 2008 and waited until 1 March 19, 2008 to file his first withdrawal motion.

but that he did not know that the money came from drug proceeds [2]:

MR. MILANES: Your Honor, had the United States taken this matter to trial, it would have proven beyond a reasonable doubt that the defendant, Heriberto Mota Cedeño, was a member of a conspiracy that knowingly and intentionally laundered millions in U.S. currency in Puerto Rico and elsewhere from in or about August of 2002, to and including January of 2005. The defendant, Mota Cedeño, attempted to launder the funds along with co-conspirators. On February 18, 2004, the defendant, Mota Cedeño, knowingly and intentionally participated in one attempted money pickup that involved $198,550 in U.S. currency. Full discovery was provided to the defense.

THE COURT: Very well.

And then I ask the defendant: Do you agree with the Government's version that you just heard?

THE DEFENDANT: Yes.

May I speak?

THE COURT: I would like to hear if you have any doubts concerning this.

THE DEFENDANT: Yes, I did pass those two bags, but I didn't know it was for laundered drugs or money, or anything like that. That I didn't know. (Whereupon, Mr. Reyes confers with the defendant.)

THE DEFENDANT: (To Mr. Reyes) No, no, not about what he said.

MR. MILANES: Your Honor, if he doesn't know that he was laundering money, we have to go to trial.

THE COURT: No, he said that he did not know that it was for drug proceeds.

That is something that will be determined—

MR. MILANES: That is absolutely correct, your Honor, but in the second part, your Honor, he said he didn't know it was money laundering. I need that for the record he has to be clear: He either knew that it was money laundering or he didn't.

THE COURT: So you knew that it was money laundering.

THE DEFENDANT: Yes.

MR. MILANES: That's fine, your Honor.

THE COURT: Okay, fine, because the other issue we will have to determine at the time of sentencing.

MR. MILANES: That's correct.

Thus, the Court will take into consideration that Defendant asserted his innocence, however, said factor will be weighed in light of Defendant's credibility and the admissions made during the Rule 11 change of plea colloquy.

The final factor is whether the Government would suffer any countervailing prejudice. This factor should be considered only if the combined weight of the aforementioned factors tilts in Defendant's favor. *United States v. Negron–Narvaez,* 403 F.3d 33, 36 (1st Cir.2005). We find that Defendant's guilty plea was voluntary, knowing and intelligent. Furthermore, the timeliness of his requests weighs against him. The Court recognizes that Defendant asserted his innocence. However, the Court gives little weight to said allegation for purposes of this analysis because Defendant admitted to money laundering in the Rule 11 colloquy. Since the combined weight of these factors go

---

**2.** Whether Defendant knew that the money came from illegal drug transactions is something that will be determined at sentencing. Said determination will have an effect on the

sentence imposed. The Court could impose a six point enhancement depending on whether Defendant had knowledge or not that the money came from drug proceeds.

**166**

against Defendant's request we need not consider whether the Government suffered any prejudice. Thus, Defendant motions to withdraw his guilty plea shall be denied.

2. *New Appointment of Counsel*

Defendant requests a new appointment of counsel. Defendant previously requested a new appointment of counsel. Said request was granted by this Court.

Regarding Defendant's current attorney, the Rule 11 transcript shows that Defendant was satisfied with Attorney Ernesto Reyes Blassino: "THE COURT: Are you fully satisfied with the counsel, representation, and advice given to you by your attorney? THE DEFENDANT: Yes." As such, we will deny Defendant's request for new counsel.

### CONCLUSION

For the reasons discussed above, the Court hereby **DENIES** Defendant's Motions. (Docket Nos. 470, 471, 472, and 474).

IT IS SO ORDERED.