# United States Court of Appeals
## For the First Circuit

No. 19-1325

UNITED STATES OF AMERICA,

Appellee,

v.

KIMBERLY KITTS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Lynch, Lipez, and Thompson,
Circuit Judges.

Vivian Shevitz for appellant.
Sara Miron Bloom, Assistant United States Attorney, with whom
Andrew E. Lelling, United States Attorney, was on brief, for
appellee.

March 3, 2022

**LIPEZ**, **Circuit Judge**.  Appellant Kimberly Kitts, an investment adviser, pleaded guilty to one count of investment adviser fraud, four counts of wire fraud, and one count of aggravated identity theft.  On appeal, Kitts argues that her plea was not knowing and voluntary, that her conduct, as described at the change-of-plea hearing, did not constitute wire fraud and aggravated identity theft, that several sentencing enhancements were improperly applied, and that her counsel was ineffective.  Hence, she asks that her guilty plea, the judgment of conviction, and the sentence relating thereto all be vacated.  If those contentions are rejected, Kitts argues that her sentence should at least be reduced from eighty-seven to eighty-four months to accord with the district court's oral ruling.  We affirm.

## I.

Kitts's arguments on appeal primarily target her change-of-plea hearing and sentencing, and we therefore only briefly recount the facts concerning her criminal activity before describing those two proceedings.  Because Kitts pleaded guilty, "we draw the essential facts from the change-of-plea colloquy and the uncontroverted portions of the presentence investigation report."  United States v. Jimenez, 512 F.3d 1, 2 (1st Cir. 2007).

Kitts worked as an investment adviser at Royal Alliance, a financial services firm in Massachusetts.  She also operated a "purported financial consulting" company named Marquis Consulting,

- 2 -

LLC.  In approximately 2011, she began misappropriating client funds by directing her clients' money into an account (the "Marquis Consulting Account"), which she used to pay personal expenses. From 2011 through mid-2017, Kitts appropriated approximately $3,454,138, primarily from three clients (referred to as Clients A, B, and C),[1] before her conduct was discovered.

In an information filed in September 2018, Kitts was charged with investment adviser fraud in violation of 15 U.S.C. §§ 80b-6 and 80b-17 (Count One), wire fraud in violation of 18 U.S.C. § 1343 (Counts Two through Five), and aggravated identity theft in violation of 18 U.S.C. § 1028A (Count Six).  Although Kitts initially pleaded not guilty to all counts, she subsequently entered a guilty plea, without a plea agreement, and waived indictment.

Throughout the proceedings in the district court, Kitts was represented by attorney Michael Mattson, who had previously represented Kitts in "local matters."  According to Kitts, Mattson had no prior experience in federal criminal matters.

A. The Change-of-Plea Hearing

At the outset of her change-of-plea hearing, the district court confirmed with Kitts that she was in an appropriate mental state to participate in the proceeding.  The court then

---

[1] The Presentence Report primarily focuses on Clients A, B, and C, but Kitts had seven total victims.

asked whether she had received a copy of the information, understood that she was charged with six counts, and had an opportunity to discuss the charges with counsel. Kitts answered yes to these questions.

The court advised her that, by pleading guilty, she would be waiving her constitutional right to be indicted by a grand jury. Again, Kitts confirmed that she understood. In response to another inquiry from the court, Kitts stated that she had discussed the waiver with her attorney. Neither party raised any objections during this portion of the proceeding.

The district court then proceeded with the plea colloquy. Kitts affirmed that she was neither forced to plead guilty nor had she received any assurances that induced her to plead guilty. Then, as directed by the court, the government detailed the maximum statutory penalties applicable to the charges. In relevant part, the government explained that the aggravated identity theft charge carried a "mandatory term of incarceration of two years, which shall not be concurrent with any other term of imprisonment imposed under any other provision of law." The government also reported the maximum five-year sentence for investment adviser fraud and the maximum twenty-year sentences that accompanied the wire fraud counts.

When asked if she understood that the district court had the authority to impose a term of imprisonment of up to five years

on Count One, charging investment adviser fraud; up to twenty years on Counts Two through Five, the wire fraud counts; and a "minimum mandatory sentence of two years" on the identity theft charge, Kitts said yes. Noting that Kitts was upset, the district court confirmed that she still understood the court's questions.

After informing Kitts of the role of the sentencing guidelines in the court's sentencing decision, the court explained the rights she would forfeit by pleading guilty, including the right to a trial by jury, the right to a trial in which she would have been presumed innocent, the right to assistance of counsel in her defense during the trial, and the right to confront the witnesses against her. The court then asked the government to summarize the facts that would have been offered at trial. Kitts agreed with the prosecutor's summary of the facts as they related to the essential elements of the charges, although she disputed the exact monetary amounts involved.

The district court then accepted Kitts's guilty plea, finding that it was knowing and voluntary, and that she understood the charges against her and the consequences of her plea.

## B. Sentencing

The Presentence Report ("PSR") calculated a total offense level of twenty-eight for Counts One through Five and a criminal history category of I, corresponding to a guideline sentencing range of seventy-eight to ninety-seven months. That

calculation began with a base offense level of seven, which was increased by sixteen levels to reflect losses of more than $1.5 million but less than $3.5 million attributable to her crimes. See U.S.S.G. § 2B1.1(b)(1). The offense level was further increased by a two-point enhancement for the victims' substantial financial hardship, a two-point enhancement for sophisticated means, and a four-point enhancement "because the offense involved a violation of securities law and . . . the defendant was an investment adviser, or a person associated with an investment adviser." See U.S.S.G. § 2B1.1(b)(2)(A)(iii), (b)(10)(c), (b)(20)(A). The offense level was then decreased by three to credit Kitts's acceptance of responsibility. See U.S.S.G. § 3E1.1(a), (b). For the sixth count -- aggravated identity theft -- the PSR reported the mandatory, consecutive two-year sentence. Thus, the total guideline range was 102 to 121 months.[2]

Kitts's attorney, Mattson, lodged several objections to the PSR, including an objection to the application of the sophisticated means enhancement. Although he did not submit a

---

[2] The guideline range of seventy-eight to ninety-seven months refers only to Counts One through Five. As to Count Six, "the guideline sentence is the term of imprisonment required by statute," U.S.S.G. § 2B1.6(a), which, here, was two years consecutive to the sentence on the other charges. As the court explained during sentencing, this scheme led to a total guideline sentencing range of 102 to 121 months.

sentencing memorandum before the sentencing hearing, Mattson did provide additional documentation at the hearing, including medical records,[3] documentation that Kitts had surrendered her passport, and at least one letter in support of Kitts. Mattson also raised an objection at the hearing to the application of the substantial financial hardship enhancement. In addition, two victims made oral statements at the sentencing hearing.

The district court overruled Kitts's objections and orally imposed a sentence of eighty-seven months, three years of supervised release, and restitution in the amount of $3,085,939. The eighty-seven-month sentence included sixty-three months for Counts One through Five and the consecutive two years for the aggravated identity theft count. The sentence imposed was thus a substantial downward variance from the guideline range of 102 to 121 months for all six counts.

## II.

As noted, Kitts challenges on appeal the validity of her guilty plea, the judgment of conviction, and her sentence. We start our analysis with her ineffective assistance of counsel claim.

---

[3] Kitts suffered from cancer beginning in 2011. As of 2016, she was in remission. She also had been diagnosed with Crohn's disease. The court considered Kitts's medical conditions, as well as the fact that she was caring for her mother, in imposing its sentence.

## A. Ineffective Assistance of Counsel

Generally, "[w]e have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court" in post-conviction proceedings. United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993). On direct appeal of an ineffective assistance of counsel claim, we have three options: "(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." United States v. Colón-Torres, 382 F.3d 76, 85 (1st Cir. 2004) (quoting United States v. Leone, 215 F.3d 253, 256 (2d Cir. 2000)). Ordinarily, we will only reach the merits if the factual record is sufficiently developed to allow consideration of the claim or remand for further factual development if there are significant indicia of ineffectiveness in the record. See id. On this record, we find no basis for departing from our usual practice of requiring that the claim be first raised in post-conviction proceedings. Hence, we dismiss Kitts's ineffective assistance of counsel claim without prejudice.

## B. The Guilty Plea

When a defendant pleads guilty, she "effectively waives several constitutional rights.  For that waiver to be valid, due process requires that the plea amount to a voluntary and 'intentional relinquishment . . . of a known right.'"  United States v Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995) (quoting McCarthy v. United States, 394 U.S. 459, 466 (1969)).  The entry of a guilty plea is governed by Federal Rule of Criminal Procedure 11, which was designed "to ensure that a defendant who pleads guilty does so with full comprehension of the specific attributes of the charge and the possible consequences of the plea."  United States v. McDonald, 121 F.3d 7, 11 (1st Cir. 1997).  We have explained that our review of a challenge to a guilty plea is animated by the "core concerns" of Rule 11: "(1) absence of coercion, (2) understanding of the charges, and (3) knowledge of the consequences of the plea."  United States v. Pimentel, 539 F.3d 26, 29 (1st Cir. 2008) (quoting United States v. Rodríguez-León, 402 F.3d 17, 24 (1st Cir. 2005)).  "Rule 11 also requires the district court to determine whether there is a factual basis for a guilty plea."  Id.

Kitts challenges the validity of her guilty plea on three grounds: (1) that she did not understand the full consequences of her plea, (2) that she did not understand the nature of the charges, and (3) that the government provided an inadequate factual

basis for the wire fraud and aggravated identity theft charges at the change-of-plea hearing. These arguments are raised for the first time on appeal. Hence, they are subject to plain error review. United States v. Borrero-Acevedo, 533 F.3d 11, 15 (1st Cir. 2008). To establish plain error, Kitts must demonstrate that (1) an error occurred; (2) the error was "clear or obvious"; (3) the error affected her substantial rights; and (4) the error "seriously affect[ed] the fairness, integrity or public reputation of [the] judicial proceedings." Puckett v. United States, 556 U.S. 129, 135 (2009) (quoting United States v. Olano, 507 U.S. 725, 736 (1993)); see also United States v. Rabb, 5 F.4th 95, 101 (1st Cir. 2021). For the reasons given below, we find no error in the district court's acceptance of Kitts's guilty plea.

**1.    The Alleged Failure to Inform Kitts of the Consecutive Sentence**

Kitts contends that her plea was invalid because she was not informed of the mandatory, consecutive two-year sentence that attached to the aggravated identity theft count. At the change-of-plea hearing, the district court asked the government to state the maximum statutory penalties that applied to Kitts. The prosecutor recited as follows:

> With respect to investment adviser fraud in violation of 15, United States Code, Section 80b, incarceration for five years; supervised release for three years; a fine of $250,000 or twice the gross gain or loss, whichever is greater; a mandatory special

- 10 -

assessment of $100; restitution; and forfeiture to the extent charged in the information.

With respect to wire fraud in violation of 18, United States Code, Section 1343, incarceration for 20 years, a five-year term of supervised release, and the same fine and restitution and forfeiture and special assessment I just mentioned.

With respect to aggravated identity theft in violation of 18, United States Code, 1028A, mandatory term of incarceration of two years, which shall not be concurrent with any other term of imprisonment imposed under any other provision of law; one year of supervised release; a special assessment of $100 per count; restitution; and forfeiture to the extent charged in the information.

(Emphasis added).

The court then asked Kitts if she understood

that as to each of the counts I have the authority to give you a term of imprisonment of[,] on Count One, the investment adviser fraud, of up to five years; on Counts Two through Five, the wire fraud counts, up to 20 years; and as to the identity theft charge, a minimum mandatory sentence of two years?

Kitts replied in the affirmative. Thereafter, the district court again referred to the "minimum mandatory sentence of two years on Count Six" when explaining the role of the sentencing guidelines.

Kitts was thus expressly told by the prosecutor that the sentence attached to Count Six was both mandatory and consecutive. As we have previously held, the fact that the maximum possible penalties are communicated to the defendant by the prosecutor, rather than the court, is not an error. See United States v. Yazbeck, 524 F.2d 641, 643 (1st Cir. 1975) (per curiam) ("To satisfy [Rule 11], the record must show that the defendant

- 11 -

was personally advised of the sentence provided by law . . . . This does not mean that a judge may never rely on the prosecutor . . . to state in open court the relevant statutory provision or to conduct portions of the required inquiry." (citations omitted)); see also United States v. Raineri, 42 F.3d 36, 40 (1st Cir. 1994) (noting that "district judges often rely heavily . . . on the prosecutor to provide the court with a description of statutory penalties").[4]  There was no error here.

**2.   The Alleged Failure to Inform Kitts of Elements of the Charges**

Kitts argues that her guilty plea was deficient because she was not adequately informed of the elements of the wire fraud and aggravated identity theft charges.[5]  This claim is belied by the record.

---

[4] Kitts also claims that she was not informed that she "would be responsible in all cases for 'losses' not in fact suffered by [her] investor-clients."  Presumably, Kitts refers to the fact that her clients would be reimbursed by an insurance policy.  It is evident from the record, however, that Kitts was informed several times that the charges carried the possibility of restitution and that, in response to inquiry from the district court, Kitts averred that she understood that prospect. Moreover, the law on this point is unmistakable.   See 18 U.S.C. § 3664(f)(1)(B) ("In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.").

[5] It is unclear if Kitts also intends this argument as a challenge to the information or as part of her ineffective assistance of counsel theory.  Any challenge to the information has been waived.  We have held "with monotonous regularity that an unconditional guilty plea effectuates a waiver of any and all independent non-jurisdictional lapses." United States v. Cordero,

- 12 -

Under Rule 11, the court must "ensure that the defendant understands 'the nature of each charge' to which [she] is pleading guilty." United States v. Cruz-Rivera, 357 F.3d 10, 13 (1st Cir. 2004) (quoting Fed. R. Crim. P. 11(b)(1)(G)). In certain circumstances, the reading of the indictment may be sufficient to fulfill this obligation. Id. During the plea colloquy, the district court recited the list of counts charged in the information, stating the count number, statutory section, and nature of the charge, and asked whether Kitts understood the charges against her. She stated that she did. In addition, the district court ascertained that Kitts had received a copy of the information and had an opportunity to discuss the charges with her attorney. The information itself contains the statutory language setting forth the elements of the wire fraud and aggravated identity theft charges and a statement of the relevant facts:

> On or about the dates below, in the District of Massachusetts and elsewhere, the defendant, [Kimberly Kitts], having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing the scheme and artifice, as follows:

42 F.3d 697, 699 (1st Cir. 1994). Such a waiver includes alleged defects in the information. See United States v. Urbina-Robles, 817 F.3d 838, 842 (1st Cir. 2016). As we have already addressed Kitts's ineffective assistance of counsel claim, we address this argument under Rule 11 only.

- 13 -

| Count No. | Date (on or about) | From | To | Item |
|---|---|---|---|---|
| 2 | 6/25/2013 | Financial Consulting Firm Account, NJ | Marquis Acct, TD Bank, MA | Wire transfer of $75,000 from account of Client A to Marquis Consulting Account |
| 3 | 7/2/2013 | Financial Consulting Firm Account, NJ | Marquis Acct, TD Bank, MA | Wire transfer of $87,500 from account of Client A to Marquis Consulting Account |
| 4 | 10/4/2013 | Financial Consulting Firm Account, NJ | Marquis Acct, TD Bank, MA | Wire transfer of $50,000 from account of Client A to Marquis Consulting Account |
| 5 | 5/22/2017 | Financial Consulting Firm Account, NJ | Marquis Acct, TD Bank, MA | Wire transfer of $125,000 from account of Clients B and C to Marquis Consulting Account |

. . .

On or about May 22, 2017, in the District of Massachusetts and elsewhere, the defendant, [Kimberly Kitts], did knowingly possess and use, without lawful authority, a means of identification of another person, to wit, the name[] and brokerage account number of Client[] B, during and in relation to the crime of wire fraud . . . .

The terms of the information are clear, the court satisfied itself that Kitts was competent to plead, Kitts confirmed that she had an opportunity to discuss the charges with her attorney, and, after hearing the charges against her, Kitts stated that she understood them.  In these circumstances, we reject Kitts's claim that she was not adequately informed of the elements

- 14 -

of the wire fraud and aggravated identity theft charges.  See United States v. Ramirez-Benitez, 292 F.3d 22, 27 (1st Cir. 2002) (finding no error where "[t]he terms of the indictment alone sufficed to put [defendant] on notice of the charge . . . . [Defendant] admitted he understood the charge and the court found him competent to plead"); see also United States v. Díaz-Concepción, 860 F.3d 32, 36-37 (1st Cir. 2017) (holding that the fact that the district court did not explain a specific element of the charged crime was not an error in violation of Rule 11).

### 3. The Factual Sufficiency of the Charges

Kitts asserts that her conduct, as described at the change-of-plea hearing, "arguably . . . did not violate" 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1028A (aggravated identity theft), and hence the court should not have accepted her plea.  We disagree.

#### a. Wire Fraud

Kitts argues that the theft charged in Count Five was complete when she received the $125,000 check from her clients' account[6] and, therefore, the fact that she subsequently initiated an interstate wire transfer to deposit the check does not amount to wire fraud.[7]  To prove wire fraud, the government must "show

---

[6] This was a joint account of Clients B and C.

[7] Kitts purports to offer a similar argument about Counts Two, Three, and Four, but she develops the argument only with respect to Count Five.  Accordingly, we focus only on those facts

. . . [defendant's] knowing and willful participation in a scheme to defraud and the use of interstate wires to further that scheme." United States v. Tum, 707 F.3d 68, 72 (1st Cir. 2013).

In support of her theory that her conduct did not amount to wire fraud, Kitts relies on Kann v. United States, 323 U.S. 88 (1944), in which the Supreme Court overturned a conviction for mail fraud after concluding that "[i]t cannot be said that the mailings in question were for the purpose of executing the scheme." Kann, 323 U.S. at 94. In that case, the defendants had cashed several checks at banks different from the drawee banks, triggering the depository banks (those that had cashed the checks) to mail the checks to those drawee banks to collect the funds. Id. at 90-92. The mailings between the banks were the basis for the mail fraud charge. Id. at 90-91. The Court rejected this theory of mail fraud, explaining that the mailings at issue occurred after "[t]he persons intended to receive the money had received it irrevocably. . . . It was immaterial to them, or to any consummation of the scheme, how the bank which paid or credited the check would collect from the drawee bank." Id. at 94.

Here, as the government notes, "[t]he interstate wiring of $125,000 . . . was an integral part of the fraudulent scheme . . . as the fraud was not complete until at least when Kitts

---

underlying Count Five. See, e.g., Rodríguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).

- 16 -

received the stolen funds into her own Marquis Consulting account." Kitts's conduct, as recounted at the change-of-plea hearing, clearly satisfied the statutory requirements for wire fraud.

### b. Aggravated Identity Theft

The aggravated identity theft statute requires that Kitts, "during and in relation to a felony violation enumerated in subsection (c), knowingly transfer[red], possesse[d], or use[d], without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1). The list of felonies in subsection (c) includes "any provision in chapter 63 (relating to mail, bank, and wire fraud)." Id. at § 1028A(c)(5). Although the broader identity theft statute proscribes the same type of identity theft, that is, "knowingly transfer[ing], possesses[ing], or us[ing], without lawful authority, a means of identification of another person," id. at § 1028(a)(7), that statute only requires that the identity theft be "in connection with[] any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law," id. Therefore, the charge of aggravated identity theft, in contrast to simple identity theft, applies when the theft is connected to a specific felony from the statutory list in subsection (c).

Given that we have already rejected Kitts's claim that her conduct did not constitute wire fraud, a crime listed in subsection (c), the key inquiry here is whether Kitts "knowingly

transfer[red], possesse[d], or use[d], <u>without lawful authority</u>, a means of identification of" one of her clients. <u>Id.</u> at § 1028A(a)(1) (emphasis added). Kitts argues that, as she had signing authority for her clients, her use of her client's signature cannot constitute identity theft.

We confronted a similar argument in <u>United States</u> v. <u>Ozuna-Cabrera</u>, 663 F.3d 496, 497-99 (1st Cir. 2011), where we considered the requirements of aggravated identity theft in relation to a defendant who had purchased a passport and social security card and attempted to use them to apply for a new passport. Ozuna-Cabrera claimed that, because he had purchased the "means of identification" from a willing seller, he was not using it "without lawful authority." <u>Id.</u> at 498. We rejected that argument, concluding that "Congress intended § 1028A to address a wide array of identity crimes, and not only those iterations involving conventional theft." <u>Id.</u> at 500. Significantly, we explained that "regardless of how the means of identification is actually obtained, if its subsequent use breaks the law . . . it is violative of § 1028A(a)(1)." <u>Id.</u> at 499.

In light of our holding in <u>Ozuna-Cabrera</u>, Kitts's conduct clearly constituted aggravated identity theft. The basis for the aggravated identity theft charge is the $125,000 theft

- 18 -

from Clients B and C.[8]  Kitts used Client B's name and account number to request a $125,000 check from Clients B and C's brokerage account, payable to her own account.  She then deposited these funds into her Marquis Consulting Account, which she used to pay her personal expenses -- conduct well beyond any lawful authority given to her by her clients to use their accounts.  Thus, her challenge to the factual basis for her plea to the aggravated identity theft charge fails.[9]

## C. Sentencing

Kitts challenges several aspects of her sentence.

### 1. Loss Calculation

Kitts contends that the loss figure calculated in the PSR overstated her culpability -- an error she did not raise in

---

[8] Kitts also argues that she should have been charged with simple identity theft, rather than aggravated identity theft, under § 1028(a)(7).  She contends that the "scheme to defraud" was actually investment adviser fraud, not wire fraud.  But, the information plainly specifies that the aggravated identity theft count is tied to a specific instance of wire fraud charged as Count Five.

[9] In connection with the aggravated identity theft charge, Kitts alludes in her briefing to a proportionality argument, claiming that the prosecutor "unfairly 'upped the ante'" by charging wire fraud as a predicate for aggravated identity theft, which comes with a mandatory, two-year consecutive sentence, 18 U.S.C. § 1028A(a)(1), (b)(2), instead of charging her with simple identity theft under § 1028(a)(7), which does not carry a mandatory sentence.  For the reasons explained above, Kitts was plainly chargeable under the aggravated identity theft statute and it is well established that the choice of charge is a matter of prosecutorial discretion.  See Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).

the district court.  Accordingly, we review the district court's acceptance of the calculation for plain error.

The PSR reported that the loss sustained by Kitts's victims totaled $3,085,939, which resulted in a sixteen-level increase in her offense level.  This figure did not include an additional $368,199 that was already repaid.[10]  Kitts argues that the district court also should have excluded amounts that were not "losses" because they were covered by an insurance policy.  She notes that "individuals were made whole by the broker-dealer, which was in turn compensated by an Errors & Omissions insurance policy into which Kitts had paid."

We have explained that reimbursement by an insurance policy merely "shifts the loss to another victim (the insurance company)." United States v. Alegria, 192 F.3d 179, 191 (1st Cir. 1999).  Therefore, regardless of whether Kitts's clients were subsequently reimbursed by an insurance policy, it was appropriate to include the full amount of misappropriated funds in the loss calculation.  See United States v. Stepanian, 570 F.3d 51, 55-57 (1st Cir. 2009) (holding that "victims" of crime include those whose losses were reimbursed).

As to Kitts's suggestion that the loss calculation should be reduced because her theft impacted only wealthy

_____

[10] The PSR states that this money "was credited and/or repaid to the victims," but it unclear by whom or with what funds.

clients,[11] that is a woefully misguided argument. As we have previously explained, the guidelines "suggest[] that 'loss' refers primarily to the value of what was taken, not the harm suffered by the victim." United States v. Walker, 234 F.3d 780, 783 (1st Cir. 2000). The guidelines provide no offset for choosing victims who arguably would suffer less from the financial harm. The district court was correct to consider the full value of the misappropriated funds in its loss calculation.

## 2. Sentencing Enhancements

Our review of sentencing enhancements consists of "clear error review [of] factual findings, de novo review [of] interpretations and applications of the guidelines, and abuse of discretion review [of] judgment calls." United States v. O'Brien, 870 F.3d 11, 15 (1st Cir. 2017) (quoting United States v. Cox, 851 F.3d 113, 119 (1st Cir. 2017)).

First, Kitts challenges the application of the sophisticated means enhancement. Undisputed portions of the PSR indicate that, after her employer began an investigation, Kitts attempted to cover up the misappropriation of her clients' funds by creating a fake company and fake Schedule C tax forms. Kitts

---

[11] In her brief, Kitts states that "the 'loss' figure overstated Kitts'[s] culpability. Kitts was aware . . . her clients were wealthy enough to weather the use of some of their funds (which she told herself was temporary)."

also "altered the Marquis Consulting Account statements to disguise the source and amounts of the deposits into that account."

The commentary to the guidelines defines "sophisticated means" as follows:

> For purposes of subsection (b)(10)(C), "sophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

U.S.S.G. § 2B1.1 cmt. n.9(B). Kitts argues that the unauthorized use of a client's signature and creating a fake company are not complex or sophisticated. The guidelines and our jurisprudence disagree. See, e.g., United States v. Pacheco-Martinez, 791 F.3d 171, 179 (1st Cir. 2015) (upholding application of the sophisticated means enhancement where the defendant "set up multiple corporate entities in order to facilitate his fraudulent schemes"); United States v. Foley, 783 F.3d 7, 26 (1st Cir. 2015) (upholding application of the enhancement where, inter alia, the defendant used fake checks and "directed his paralegal to draw and then redeposit a check . . . to create the appearance that the borrower's funds had been received"). The record plainly supports the application of the enhancement.

Kitts also objects to the two-point enhancement for substantial financial hardship. The PSR connects the application of the enhancement to the losses suffered by Client A. In total, Kitts fraudulently obtained approximately $2,014,887 from Client A. As a result, the PSR reports, "[Client A's] savings w[ere] nearly depleted and she was forced to liquidate her apartment in order to generate funds to support herself." Kitts argues that the victims who spoke at her sentencing hearing -- not including Client A, who submitted a victim impact letter instead -- were more upset about being deceived by a friend than about their financial losses. And, in another misguided argument, Kitts suggests in her brief that her clients did not suffer financial hardship because they were "well-off."[12]

It is the impact on the victims' financial situation, not their distress when speaking at the sentencing hearing, that is relevant to the substantial financial hardship enhancement. See United States v. George, 949 F.3d 1181, 1185-86 (9th Cir. 2020) (interpreting the term "substantial financial hardship"). Client A's experience, including the loss of her savings and the liquidation of her apartment, inescapably constitutes substantial financial hardship within the ambit of the guidelines. See

---

[12] Kitts argues that "while what she did to [her] clients was wrong, none of [her] well-off clients suffered particularly 'substantial financial hardship.'" She does not make any specific arguments as to the impact on Client A.

U.S.S.G. § 2B1.1 cmt. n.4(F) (listing "suffering a substantial loss of a . . . savings or investment fund" and "making substantial changes to his or her living arrangements" as examples of substantial financial hardship). Accordingly, the district court did not abuse its discretion in applying the substantial financial hardship enhancement.

## D. Written Judgment

Lastly, Kitts argues that the eighty-seven-month term of incarceration in the judgment entered against her must be reduced to eighty-four months. During the sentencing hearing, the district court initially stated that it was "impos[ing] a sentence of 87 months, that's 63 months on Counts One through Five and on-and-after time of 24 months for a total of 87 months." However, later in the hearing, when formally imposing sentence, the district court appeared to make a misstatement:

> [I]t is the judgment of this [c]ourt that you're hereby committed to the custody of the Bureau of Prisons for a term of 84 months.

> This term shall consist, as I said, of 63 months on Counts One through Five to be served concurrently with each other, and a term of 24 months on Count Six to be served consecutively to the term imposed on Counts One through Five.

The written judgment contains a sentence of eighty-seven months. Kitts contends that the discrepancy between the court's second statement referencing an eighty-four-month sentence and the

- 24 -

written judgment requires that her term of incarceration be amended to eighty-four months.

Kitts relies on United States v. Rosario, 386 F.3d 166, 168 (2d Cir. 2004) for the general proposition that "in the event of variation between an oral pronouncement of sentence and a subsequent written judgment, the oral pronouncement controls." As the Second Circuit explained, "[t]his rule implements the requirement that a defendant is entitled to be present at all critical stages of his trial, including sentencing." Id. at 168-169. We adhere to the same rule. See, e.g., United States v. Ortiz-Torres, 449 F.3d 61, 74 (1st Cir. 2006).

However, our analysis typically focuses on whether a defendant had appropriate notice of the terms of the written judgment at the sentencing. Id. Kitts does not argue that she lacked notice of the sentence contained in the written judgment. She simply argues that her sentence must be amended to correspond with the court's statement during the formal imposition of her sentence, when the court made the mathematical error.

This argument fails. The district court first explained that it was imposing a sentence of eighty-seven months, divided into the two segments it identified (sixty-three months on Counts One through Five and twenty-four months on Count Six), and it subsequently recorded that sentence in the written judgment. The district court's isolated reference to eighty-four months, in its

second reference to the prison term, was clearly a simple misstatement. Following that misstatement, the court again referenced the separate terms of sixty-three months and twenty-four months (totaling eighty-seven months). In light of the first reference to an eighty-seven-month sentence and the subsequent correct recitation of the months attached to each count, Kitts had notice of the terms of the written judgment, and we see no basis to amend the judgment based on an isolated misstatement.

Affirmed, except that Kitts's ineffective assistance of counsel claim is dismissed without prejudice.