# United States Court of Appeals
## For the First Circuit

No. 23-1329

UNITED STATES OF AMERICA,

Appellee,

v.

JASON CANDELARIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Gelpí, Circuit Judges.

Edward S. MacColl and Thompson, Bull, Bass & MacColl, LLC, P.A. on brief for appellant.
Darcie N. McElwee, United States Attorney, and Brian S. Kleinbord, Assistant United States Attorney, on brief for appellee.

June 24, 2024

**SELYA**, <u>Circuit Judge</u>.   Defendant-appellant Jason Candelario challenges his top-of-the-range sentence, arguing that it is substantively unreasonable and creates an unwarranted disparity with the sentences imposed on his codefendants. Concluding, as we do, that the appellant's sentence was both reasonable and proportionate, we affirm.

**I**

We briefly rehearse the relevant facts and travel of the case. "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." <u>United States</u> v. <u>Vargas</u>, 560 F.3d 45, 47 (1st Cir. 2009).

In 2019, the appellant and three codefendants conspired to rob a Maine resident of drugs and money.   On the day of the planned robbery, the appellant and three of his codefendants drove to the victim's residence.   The appellant and another member of his crew, masked and armed, waited nearby for the victim to return home.   Shortly thereafter, the victim, accompanied by his girlfriend and a female acquaintance,[1] arrived in a truck and parked in the garage.   The appellant and his companion then entered the garage.   The appellant's confederate approached the vehicle,

_____

[1] This acquaintance was later implicated in the robbery. She cooperated with the authorities, however, and was not charged.

struck the passenger-side truck window with the butt of his gun, and told the victim's girlfriend (who was in the passenger seat) not to make eye contact with him or call 911.

Meanwhile, the appellant approached the victim, who wrestled the appellant to the ground. The appellant's confederate then shot the victim in the abdomen. The two attackers subsequently fled, and the victim (who ultimately survived) was rushed to the hospital.

About two years later, a federal grand jury sitting in the District of Maine returned an indictment against four defendants — the appellant, the second attacker, a third defendant who drove the getaway vehicle, and a fourth defendant who participated in organizing the robbery and provided the firearms used. In November of 2022, the appellant entered a guilty plea to counts charging conspiracy to commit a Hobbs Act robbery, see 18 U.S.C. § 1951(a); interference with commerce by violence, and aiding and abetting, see id.; 18 U.S.C. § 2; and illegally possessing a firearm, see 18 U.S.C. § 924(a)(2). His three codefendants also entered guilty pleas to various counts.

The district court convened the appellant's disposition hearing on March 27, 2023. At the outset, the court addressed the disputed fact of whether the appellant or another defendant was the assailant who, during the robbery, tried to break the truck's passenger seat window and then fired the shot that injured the

victim. The court concluded, for the purposes of sentencing, that the appellant's confederate was the perpetrator. Even so, the court deemed both men "equally culpable" for the events that transpired in the victim's garage; after all, those events were "a foreseeable consequence of [the two malefactors'] joint effort to commit a robbery."

The district court calculated a guideline sentencing range of 140 to 175 months, to which all parties acceded. Emphasizing the violent nature of the crimes of conviction, the appellant's role as one of the two physical assailants, and his four prior felony convictions (which placed him in criminal history category V), the government urged the district court to "depart or vary its sentence upward." For his part, the appellant urged the court to impose a sentence of 120 months, citing mitigating factors such as his difficult childhood and genuine remorse. The district court also heard statements from the victim's girlfriend, who spoke about the crime's impact on her and the victim. And the court heard from two friends of the appellant, who spoke about his challenges growing up without a father and with a mother who was incarcerated, as well as recent improvements he had made in his life.

In the end, the district court imposed a 175-month term of immurement. In the process, the district court accepted the appellant's expressions of remorse and acceptance of

responsibility as sincere. It also declined to impose an upward departure and, giving weight to the appellant's difficult childhood, declined to vary his sentence upward. All things considered, the district court found that a sentence at the top of the guidelines range was appropriate due to the seriousness of the harm committed, the appellant's criminal history, the "serious risk of recidivism," and the need to provide both specific deterrence and "general deterrence to the public at large, which needs to understand that the [c]ourt will impose lengthy sentences for conduct this despicable."

This timely appeal followed.

**II**

In this venue, the appellant argues that his sentence was substantively unreasonable. He emphasizes that it was the highest of all of his codefendants' sentences. We agree with the government that the appellant's sentence was substantively reasonable and did not create an unwarranted disparity when compared to his codefendants' sentences. Although the parties dispute whether the appellant's challenges to his sentence were preserved below, we bypass that dispute because — under either plain error review or abuse of discretion review — his sentence passes muster.

When faced with a sentencing appeal in a criminal case, "[w]e first determine whether the sentence imposed is procedurally

reasonable (that is, free from reversible error in its procedural aspects) and then determine whether it is substantively reasonable." United States v. Demers, 842 F.3d 8, 12 (1st Cir. 2016). Within this bifurcated structure, we review a sentencing court's factual findings for clear error and its interpretation and application of the guidelines de novo. See United States v. Walker, 665 F.3d 212, 232 (1st Cir. 2011).

As a preliminary matter, we note that although the appellant's opening brief states that his sentence was both "substantively and procedurally unreasonable," none of his briefing indicates what procedural aspect of his sentence was erroneously imposed. The only potential argument that we can identify as to procedural reasonableness is the appellant's statement that the district court "provided no explanation" for why the length of the appellant's sentence "was appropriate or necessary." Cf. United States v. Crespo-Ríos, 787 F.3d 34, 37 n.3 (1st Cir. 2015) ("The lack of an adequate explanation can be characterized as either a procedural error or a challenge to the substantive reasonableness of the sentence."). The appellant, though, has not developed this argument separately from his argument that, in the context of substantive reasonableness, his sentence lacked a "plausible sentencing rationale." United States v. Gonzalez, 981 F.3d 11, 24 (1st Cir. 2020) (quoting United States v. Cameron, 835 F.3d 46, 52 (1st Cir. 2016)). Thus, we consider

- 6 -

any claim of procedural error waived for lack of development.[2] United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

We proceed, then, directly to the issue of substantive reasonableness. The appellant's primary contention is that his sentence was disproportionately harsh when compared to those of his codefendants. See United States v. Reverol-Rivera, 778 F.3d 363, 366 (1st Cir. 2015) (considering argument that "sentence was substantively unreasonable because of the disparity with the sentence given to a co-defendant"). And it is common ground that a district court, when imposing a sentence, "must consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" Id. (quoting 18 U.S.C. § 3553(a)(6)). Even so, a genuine sentence disparity can only exist "between 'two identically situated defendants.'" United States v. De La Cruz, 91 F.4th 550, 555 (1st Cir. 2024) (quoting United States v.

---

[2] In all events, we have commented before "that an adequate explanation for an upwardly variant sentence and the 'plausible rationale' element of the test for substantive reasonableness 'are almost always two sides of the same coin.'" United States v. Ortiz-Pérez, 30 F.4th 107, 113 (1st Cir. 2022) (quoting United States v. Valle-Colón, 21 F.4th 44, 50 (1st Cir. 2021)). The same principle may apply even when the sentence is not a variant sentence but, rather, a within-the-range sentence.

<u>Grullon</u>, 996 F.3d 21, 35 (1st Cir. 2021)).  "Where 'material differences between the defendant and the proposed comparator suffice to explain the divergence,' a sentencing disparity claim is unlikely to prevail."  <u>United States</u> v. <u>Coplin-Benjamin</u>, 79 F.4th 36, 43 (1st Cir. 2023) (quoting <u>Demers</u>, 842 F.3d at 15).

In this instance, there were several material differences between the appellant and the codefendants to whom he points.  Those discrepancies were more than sufficient to explain the differences in their sentences.  For example, the proposed comparator codefendants were subject to lower guideline sentencing ranges than was the appellant, and the appellant does not dispute the accuracy of the guideline calculations.  This is a critical datum in a disparity analysis.  <u>See</u> <u>United States</u> v. <u>Bedini</u>, 861 F.3d 10, 22 (1st Cir. 2017) (rejecting defendant's sentencing disparity claims in part because other defendants were "subject to lower applicable Guidelines ranges").

Moreover, the codefendant who received the lowest sentence of ninety-six months was supportably found to be the "least culpable" of the four coconspirators because he only participated as the drop-off and getaway driver for the robbery.  The appellant, in contrast, was one of the two main physical aggressors in the robbery.  So, too, this codefendant warranted leniency because he cooperated with the government — but the appellant turned a deaf ear.  Lack of cooperation is a powerful

reason for holding a defendant to the rigors of the guidelines. Cf. United States v. La Guardia, 902 F.2d 1010, 1016 (1st Cir. 1990) ("[T]he government has a strong interest in encouraging defendants to cooperate.").

Similarly, another codefendant, who received a sentence of 144 months (later reduced to 128 months), played a significantly different role in the robbery because he was not a physical aggressor. His case thus differentiated itself from that of the appellant. And in addition, this codefendant started with a cleaner slate than the appellant. All these differences — and others like them — are factors that we have held are reasonable for imposing a lower sentence on one codefendant than on another. See, e.g., United States v. Oquendo-Garcia, 783 F.3d 54, 58 (1st Cir. 2015) (finding no disparity when codefendant who received lower sentence had fewer weapons-based and overall convictions and arrests); United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir. 2005) (finding no disparity when coconspirator who received lower sentence cooperated more promptly and fully); De La Cruz, 91 F.4th at 556 (finding no disparity when codefendant who received lower sentence played different role in conspiracy).

The appellant trains his heaviest fire on the disparity between his 175-month sentence and the 120-month sentence given to the second physical aggressor in the robbery (the codefendant who apparently shot the victim). The justification for this

codefendant's lower sentence, though, is evident:  Unlike the appellant, he cooperated in the government's investigation and thus received a downward departure for substantial assistance under USSG §5K1.1.  Our caselaw provides unambiguously that "dissimilar . . . cooperation with the government" is a sufficient material difference between defendants to defeat a disparity claim.  United States v. Romero, 906 F.3d 196, 211 (1st Cir. 2018); see United States v. Flores-Machicote, 706 F.3d 16, 24 (1st Cir. 2013).

The appellant argues that rewarding his codefendant's cooperation with a lower sentence is "fundamentally unfair" because his codefendant at one point lied to investigators about being the shooter whereas the appellant "never sought to shift blame to others."  We see nothing unfair about this outcome.  Even assuming that the codefendant lied about being the shooter, his testimony on this fact was not the primary source of his cooperation with the government.  As the government explained to the district court, the codefendant's testimony corroborated both physical evidence and other witnesses' testimony and played a major role in securing the conviction against another codefendant for whom the government did not have DNA evidence.  Nothing in the record suggests that these grounds for the codefendant's cooperation would have been diminished by his alleged dishonesty about who shot the victim.

Nor are we convinced by the appellant's argument that, "[e]ven apart from the question of disparity," his sentence lacked a "plausible sentencing rationale" and a "defensible result." (Quoting Gonzalez, 981 F.3d at 24). Generally, we will consider a sentence substantively reasonable as long as it falls within the "universe of reasonable sentencing outcomes." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011). Where, as here, the challenged sentence was within a properly calculated guideline range, the appellant carries a particularly heavy burden to "adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be 'reasonable.'" United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011) (quoting United States v. Navedo-Concepción, 450 F.3d 54, 59 (1st Cir. 2006)).

In the case at hand, the district court clearly stated its reasons for imposing a top-of-the-range sentence: the violent nature of the crime, the appellant's extensive criminal history, and the need for both specific and general deterrence. There is nothing implausible or indefensible about this rationale, especially with respect to a within-range sentence. Each of these reasons is supported by undisputed facts in the record.[3] What is

---

[3] Although the appellant disputes certain details related to his criminal history, he does not dispute the fact that he has

more, the appellant is incorrect that the district court failed to "explain[] . . . how such a sentence considered the extraordinary mitigating factors the court acknowledged and found were present." The district court stated that because the appellant's difficult childhood served as a mitigating factor, it would not impose an upward variance as the government requested. The court was not obligated to give this and other mitigating circumstances more weight. See Clogston, 662 F.3d at 593 ("That the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable.").

That ends this aspect of the matter. We find no meaningful sentencing disparity. Nor do we find anything substantively unreasonable about the appellant's within-the-range sentence, which is both defensible on the record and plausibly explained by the district court in ample detail. See Gonzalez, 981 F.3d at 24. Although the appellant may have preferred that the district court weighed his circumstances differently and focused on a lower point in the guideline sentencing range, we cannot say that his sentence — as imposed — falls outside the "wide universe of supportable sentencing outcomes." United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014).

---

multiple felony convictions or that he participated in physically ambushing the victim, even if he did not fire the gun.

## III

We need go no further.  For the reasons elucidated above, the district court's sentence is

**Affirmed**.