# United States Court of Appeals
## For the First Circuit

No. 24-1009

UNITED STATES OF AMERICA,

Appellee,

v.

JAMES WARD JACKSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Kayatta, Selya, and Aframe,
Circuit Judges.

John L. Calcagni III, with whom Law Office of John L. Calcagni III, Inc. was on brief, for appellant.
Julie M. White, Assistant United States Attorney, with whom Lauren S. Zurier, Assistant United States Attorney, and Zachary A. Cunha, United States Attorney, were on brief, for appellee.

September 30, 2024

**SELYA**, **Circuit Judge**. Defendant-appellant James Ward Jackson, a priest, resided in the rectory of St. Mary's Catholic Church in Providence, Rhode Island. The rectory stood on the church's grounds. After obtaining a warrant to search the rectory, the government seized the appellant's laptop and external hard drive. A forensic examination revealed over 12,000 images and 1,300 videos depicting child pornography on the appellant's laptop.

In due season, a federal grand jury sitting in the District of Rhode Island charged the appellant with receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). After some procedural skirmishing, not relevant here, the appellant entered a conditional guilty plea, see Fed. R. Crim. P. 11(a)(2), reserving only his "right to have [this court] review . . . the [d]istrict [c]ourt's denial of [his m]otion to [s]uppress." According to his plea agreement, the appellant understood that, on appeal, he would only be able to "raise the specific suppression issues addressed in the [d]istrict [c]ourt order" denying his motion to suppress.

In this appeal, we first consider whether the warrant was sufficiently particular as to the premises to be searched and the property to be seized. We then consider whether the officers executing the search relied on the warrant in good faith.

Concluding, as we do, that — regardless of whether the warrant was sufficiently particular — the officers reasonably relied on the warrant when executing their search, we affirm the judgment below.

## I

We briefly rehearse the relevant facts as presented by the record and then proceed to chronicle the travel of the case. We start with the affidavit on which the challenged warrant rests. According to that affidavit, on September 4, 2021, Detective Corporal Stephen Evans, a member of the East Providence Police Department assigned to the Rhode Island Internet Crimes Against Children Task Force (the Task Force), observed a device using a specific IP address on a peer-to-peer file-sharing network sharing and downloading files of child pornography. Throughout September and October of 2021, Detective Evans observed that a device connected to this same IP address visited a peer-to-peer file-sharing network on three additional occasions. On one of these occasions, the device interacted with nine more files of child pornography.

Through an investigation which included an inquiry directed to the American Registry of Internet Numbers, Detective Evans determined that the subscriber of the IP address was the bookkeeper for St. Mary's Church in Providence, Rhode Island. According to Detective Evans, bookkeepers are commonly listed as

- 3 -

subscribers for commercial properties because they are responsible for bill payment.

In October of 2021, Detective Evans visited the neighborhood in which St. Mary's Church was located. He discovered that the building was a stone church with a "St. Mary's Catholic Parish" sign in front of it. Detective Evans also saw a yellow building next to the church, with a "Church of St. Mary" sign in front of it. This building housed the church's offices and rectory.

While standing close to the church, Detective Evans checked publicly available Wi-Fi signals and located a network titled "St. Mary's Church _Ext." He also learned that this Wi-Fi signal was password-protected.

Based on his observations, Detective Evans applied for and received a Rhode Island state search warrant. The warrant was issued by a state-court judge on October 21, 2021. It identified the place to be searched as:

> The premises located at 538 Broadway, Providence, Rhode Island 02909. Said premises is [sic] described as a stone church with "St. Mary's Catholic Parish" affixed to a sign in the front of the building. The search will include exterior buildings on the property to include the detached yellow building commonly known as the rectory. The search will include storage spaces located on the premises used by residents.

The warrant identified the property to be searched for and seized as:

> Computer hardware, computer software, mobile devices, and portable digital storage devices, to include the contents therein. Additionally, any and all computer-related documentation, records, documents, material, proceeds, and passwords or other data security devices related to the possession and transfer of child pornography.

Detective Evans and other members of the Task Force executed the search warrant on October 30, 2021, seizing the appellant's laptop and an external hard drive from the appellant's office area in the rectory. According to the government, a subsequent forensic examination of the laptop's hard drive revealed over 12,000 images and 1,300 videos depicting child pornography.[1] The appellant's arrest followed.

A federal grand jury proceeded to indict the appellant on charges of receipt of child pornography, see 18 U.S.C. § 2252(a)(2), (b), and possession of child pornography, see id. § 2252(a)(4)(B), (b)(2). The appellant moved to suppress the evidence obtained in the search. On November 14, 2022, the district court denied the appellant's motion. The court could not "conclusively determine[]" whether the rectory was a single-family residence or a multi-unit dwelling. United States v. Jackson, 642

---

[1] The appellant has not contested the accuracy of these figures.

F. Supp. 3d 235, 241 (D.R.I. 2022). Even so, the court found that because the rectory appeared to lack the hallmarks typical of multi-unit dwellings (such as separate entrances, separate doorbells, separate mailboxes, and independent living space), it was "best characterized as a single-family residence." Id. With this reasoning in place, the court held that the warrant's description was sufficiently particular both as to the property to be searched and the things to be seized. Id. at 239-41. As a fallback, the court added that even if the warrant lacked sufficient particularity, the good-faith exception to the exclusionary rule would apply. Id. at 242; see, e.g., United States v. Coombs, 857 F.3d 439, 446-48 (1st Cir. 2017) (explaining that suppression is inappropriate when officers exhibited good faith and affirming denial of motions to suppress when officers' good faith was manifest).

Some three months later, the appellant moved for reconsideration of the district court's order denying his motion to suppress. The appellant argued that additional facts proved that the rectory was best characterized as a multi-unit dwelling[2] and that the warrant was therefore insufficiently particular. The

_____

[2] These additional facts included affidavits of two priests affiliated with St. Mary's Church, describing the physical properties of the church and rectory; photographs of the interior and exterior of the rectory; and the St. Mary's Church bulletin, listing multiple church leaders.

district court denied this motion, reiterating that even if the rectory was a multi-unit dwelling, the warrant was not so facially deficient that the executing officers could not reasonably presume it to be valid, thus defenestrating any basis for suppression.

The appellant subsequently entered a conditional guilty plea to one count of receipt of child pornography, see 18 U.S.C. § 2252(a)(2), and the government dismissed the charge of possession of child pornography. The conditional plea provided that under Rule 11(a)(2) of the Federal Rules of Criminal Procedure, the appellant reserved his right to appeal the district court's November 14, 2022 order denying his motion to suppress. Moreover, it confirmed that the appellant understood that he would not be allowed to raise any other claims on appeal — only the specific suppression issues addressed in the designated order.

On December 13, 2023, the district court sentenced the appellant to serve a seventy-two month term of immurement. This appeal followed.

## II

### A

"In reviewing a district court's denial of a motion to suppress, 'we assess factual findings for clear error and evaluate legal rulings de novo.'" United States v. Garcia-Hernandez, 659 F.3d 108, 111 (1st Cir. 2011) (quoting United States v. Fagan, 577 F.3d 10, 12 (1st Cir. 2009)). This review is highly deferential.

"If any reasonable view of the evidence supports the denial of a motion to suppress, we will affirm the denial." United States v. Boskic, 545 F.3d 69, 77 (1st Cir. 2008).

The Fourth Amendment declares that no search warrant shall issue unless it "particularly describ[es] the place to be searched, and the . . . things to be seized." U.S. Const. amend. IV. "[T]he test for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." United States v. Vega-Figueroa, 234 F.3d 744, 756 (1st Cir. 2000) (quoting United States v. Bonner, 808 F.2d 864, 866-67 (1st Cir. 1986)). Although "the particularity requirement obligates the police to 'specify the precise unit that is the subject of the search,' and 'the general rule is that a warrant that authorizes the search of an undisclosed multi-unit dwelling is invalid,'" the police may lawfully search a multi-unit dwelling — even if the warrant was only for a single-unit dwelling — provided that the police reasonably believed that the dwelling contained only one unit. United States v. Mousli, 511 F.3d 7, 12 (1st Cir. 2007) (quoting United States v. Pérez, 484 F.3d 735, 741 (5th Cir. 2007)). And "a warrant for a single-unit residence authorizes the search of that entire dwelling regardless

of who the area being searched belongs to, so long as the items delineated in the warrant could reasonably be found in the searched area." United States v. McLellan, 792 F.3d 200, 212 (1st Cir. 2015).

This case is not entirely unique:  courts previously have been asked to distinguish a dwelling as either a single- or multi-unit residence in the context of Fourth Amendment claims arising out of the execution of a warrant.  "Whether a dwelling constitutes a single- or multi-unit residence is a fact-intensive and situation-specific determination, and thus there are no hard-and-fast rules as to what category any particular dwelling falls into." Id.  Instead, when considering the issue, courts are guided by observable factors which indicate whether a dwelling is a single- or multi-unit residence, such as whether the residence has individual units, independent entrances, or separate living spaces within the dwelling.  See, e.g., id. at 213; United States v. Hinds, 856 F.2d 438, 441-42 (1st Cir. 1988); United States v. Ferreras, 192 F.3d 5, 10-11 (1st Cir. 1999).  Courts also consider that the validity of a warrant is assessed based on the information the police disclosed, or had the duty to discover and disclose, to the judge issuing the warrant.  See Maryland v. Garrison, 480 U.S. 79, 85 (1987).

In the case at hand, the appellant argues that the warrant lacked sufficient particularity as to the place to be

searched because it did not specify an individual suspect or residence within the rectory to be searched, notwithstanding the warrant's acknowledgement and the executing officers' knowledge as a result of the search that more than one resident lived in the rectory. Given these facts, the appellant further argues that the warrant amounted to a warrant to search multiple residences.

The district court found that the rectory is "best characterized as a single-family residence," although it qualified its finding by noting that this distinction could not "be conclusively determined based on the available information." Jackson, 642 F. Supp. 3d at 241. As the court observed, the warrant was premised upon externally observable indicia that the rectory was a single-unit dwelling, including the fact that the property did not have separate or independent entrances, doorbells, or mailboxes. See id. What is more, the property contained common, as opposed to separate, living spaces. See id. In our view, these considerations reasonably differentiate single-unit dwellings from multi-unit dwellings. See, e.g., United States v. Williams, 917 F.2d 1088, 1091 (8th Cir. 1990); Hinds, 856 F.2d at 441-42; see also United States v. Werra, 638 F.3d 326, 334-36 (1st Cir. 2011) (considering, among other factors, shared use of house and common areas as a whole in determining whether occupant of non-traditional house had reasonable expectation of privacy in entire house). The evidence that Detective Evans disclosed and

should have disclosed to the issuing judge indicates that the rectory was properly characterized as a single-unit dwelling. See Garrison, 480 U.S. at 85.

To be sure, the warrant acknowledged, and the executing officers' search confirmed, that more than one resident lived in the rectory. But this fact alone does not negate the validity of the warrant. See Hinds 856 F.2d at 441-42 (finding that "the mere presence of more than one family in a building [does not] automatically change[] its character from single family to multifamily"). And during their search, the executing officers were bound to have observed that the rectory largely lacked indicia of a multi-unit dwelling, such as separate living spaces.

The appellant's generalized desire that the police incorporate his "alternative solutions" toward identifying criminals in their investigations is a largely inappropriate consideration when determining whether the warrant in this case was sufficiently particular.[3] We conclude, therefore, that on the whole, the property to be searched, "was described as accurately as could be reasonably expected." Id. at 442; see McLellan, 792

_____

[3] The appellant suggests a range of alternative solutions, such as requiring the government to seize an internet router (prior to seizing an individual's computer) in order to determine the exact device connected to the IP address at the time of the suspected illegal activity. The appellant also proposes that the government should install software on an internet server that discloses a computer's address when the computer downloads pornography from a certain provider.

- 11 -

F.3d at 212; see also Bonner, 808 F.2d at 868 (reasoning that search warrants should be considered in commonsense manner and hyper-technical readings should be avoided).

Turning to the particularity of the items to be seized, the appellant argues that because the warrant listed numerous items of evidence with no regard for the owner of the device or the existence of probable cause for each individual item, the warrant was insufficiently particular. To be clear, the warrant procured here was limited to "[c]omputer hardware, computer software, mobile devices, and portable digital storage devices, to include the contents therein" and additional computer-associated items specifically "related to the possession and transfer of child pornography." In the context of our ever-increasing use of technology, the appellant's plaint that the warrant did not limit the items to be seized to those items that the police — while conducting the search — could not reasonably exclude as the source of the file-sharing that gave rise to the warrant is not without some force. Absent such a limitation, it is possible that the warrant could lead officers to seize an innocent resident's devices. Taking into account the current climate in which individuals increasingly maintain personal data on their electronic devices, warrant applicants, as well as residents, might benefit from protective protocols that minimize intrusion or encourage investigation into specific electronic devices. Cf.

United States v. Rivera-Morales, 961 F.3d 1, 13-14 (1st Cir. 2020) (discussing potential limitations of, and caution necessary when, applying private-search doctrine to cell phones and other digital devices).

But our analysis of the particularity of the items to be seized must also consider the nature of the computer-based child pornography charges lodged against the appellant. See United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999) (holding warrant that permitted seizure of items including "[a]ny and all computer software and hardware" valid in child pornography case); see also United States v. Corleto, 56 F.4th 169, 176-77 (1st Cir. 2022) (upholding — given evidence in affidavit of defendant's sexual exploitation of minor and transportation of child pornography — warrant permitting seizure of wide range of electronic devices). Given these competing considerations and the availability of the good-faith exception, we need not definitively determine whether the district court acted reasonably in finding that the warrant described the items to be seized with sufficient particularity.

**B**

Even were we to find that the warrant was not sufficiently particular as to either the place to be searched or property to be seized, the district court's denial of the appellant's motion to suppress would still survive scrutiny under what is commonly known as the good-faith exception to the

exclusionary rule. Cf. United States v. Gonzalez, __ F.4th __, __ (1st Cir. 2024) [No. 24-1070, slip op. at 13-14] (collecting cases approving bypass of Fourth Amendment inquiries and proceeding directly to good-faith analysis).

Under the good-faith exception, when officers "objectively reasonabl[y] rel[y] on a subsequently invalidated search warrant," then "the marginal or nonexistent benefits produced by suppressing evidence obtained in" these circumstances "cannot justify the substantial costs of exclusion." United States v. Leon, 468 U.S. 897, 922 (1984). "This is particularly true . . . when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Id. at 920.

Contrary to the appellant's importunings, we agree with the district court that the warrant was not so "facially deficient . . . in failing to particularize the place to be searched or the things to be seized . . . that the executing officers [could not] reasonably presume it to be valid." Id. at 923. Nor is the affidavit supporting the warrant "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975)).

We need not tarry. Detective Evans' affidavit describes his multiple observations over a two-month time span of a device

- 14 -

using a specific IP address on a peer-to-peer file-sharing network sharing and downloading files of child pornography. The affidavit includes descriptions of many of these files which fit the definition of child pornography. The affidavit further describes Detective Evans' investigation into the ownership of the IP address, how he determined that the owner was affiliated with St. Mary's Church, and his visit to the church grounds (including the rectory). So, too, the affidavit explains that individuals seeking to obtain and share child pornography often use file-sharing programs, such as the peer-to-peer network employed here. Far from a barebones proffer, Detective Evans' thorough and detailed affidavit provided a sound basis for a reasonable officer to infer that an individual was using a device to share and download child pornography, in violation of the law, either at St. Mary's Church or its adjoining rectory. See id. at 926. Because it was objectively reasonable for the officers conducting the search of the rectory and the seizure of the appellant's laptop and hard drive to rely on the warrant, the motion to suppress was appropriately denied under the good-faith exception. See Gonzalez, __ F.4th at __ [No. 24-1070, slip op. at 19-25].

**C**

The appellant dedicates a portion of his brief to the proposition that if a warrant to search a rectory required a lesser standard of particularity or probable cause than a warrant to

- 15 -

search a different dwelling, this would impact individuals' First Amendment rights (such as freedom of assembly). But — as the appellant implicitly acknowledges throughout his argument — we consider the appellant's contentions regarding the warrant's particularity under the same Fourth Amendment particularity standard as any other warrant. Consequently, the appellant's First Amendment argument gains him no ground.

**D**

We turn last to the appellant's attempt to extend this appeal to the denial of his motion for reconsideration. The government contends that the appellant failed to reserve his right to appeal the district court's denial of his motion to reconsider and, therefore, we should neither review that ruling nor consider the additional arguments submitted in support of it. The appellant rejoins that he reserved his right to appeal the issues raised in his motion to suppress and that those issues are essentially the same as those raised by his later motion to reconsider. Thus — his thesis runs — by reserving his right to challenge the denial of his motion to suppress, he also reserved his right to challenge the denial of his motion to reconsider. We do not agree.

Federal Rule of Criminal Procedure 11(a)(2) allows a defendant who enters a conditional guilty plea to "reserv[e] in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." This rule "is

designed to 'ensure careful attention to any conditional plea,' to 'identify precisely what pretrial issues have been preserved for appellate review,' and to husband scarce judicial resources by permitting a defendant fully to litigate hoarded issues while at the same time lessening the burden on busy district courts and sparing the sovereign the expense of trial." United States v. Caraballo-Cruz, 52 F.3d 390, 392 (1st Cir. 1995) (quoting Fed. R. Crim. P. 11 advisory committee's note to 1983 amendment).

Rule 11(a)(2) says what it means and means what it says. Seen in this light, "[i]t is a commonsense proposition that defendants who choose to enter conditional guilty pleas must 'use care and precision in framing the issues to be preserved for appeal.'" United States v. Adams, 971 F.3d 22, 31 (1st Cir. 2020) (quoting United States v. Simmons, 763 F.2d 529, 533 (2d Cir. 1985)). "Virtually any and all nonjurisdictional issues not explicitly preserved for appeal in the conditional plea agreement — and certainly all Fourth Amendment suppression issues — are deemed waived." Id. at 30 (collecting cases).

As part of his conditional plea agreement under Rule 11(a)(2), the appellant reserved his right to appeal the district court's denial of his motion to suppress — no more and no less. The appellant did not reserve his right to appeal the district

court's denial of his motion for reconsideration.[4]  Under these circumstances, the appellant has waived his right to seek appellate review of the district court's denial of his motion for reconsideration.[5]

## III

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**Affirmed**.

---

[4] The appellant's plea agreement reads, in relevant part:

> Under subsection (a)(2) of Rule 11 of the Federal Rules of Criminal Procedure, Defendant reserves the right to have the [c]ourt of [a]ppeals review: (1) the [d]istrict [c]ourt's denial of Defendant's Motion to Suppress . . ., which denial is set forth in its entirety in the [c]ourt's November 14, 2022 Memorandum and Order . . .  The United States consents to this limited reservation of appellate rights by Defendant under Rule 11(a)(2).  Defendant understands that he will not be allowed to raise other suppression claims on appeal, and that he may only raise the specific suppression issues addressed in the [d]istrict [c]ourt order.

[5] We note that even if we were to consider the appellant's arguments based on his motion to reconsider, our decision would be unchanged.