# United States Court of Appeals
## For the First Circuit

No. 24-2088

UNITED STATES,

Appellee,

v.

JESUS MALDONADO, a/k/a Juan Moreno, a/k/a William Hernandez,
a/k/a Jesus Hernandez, a/k/a William Melendez,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Montecalvo, Lynch, and Dunlap,
Circuit Judges.

Noreen McCarthy and The McCarthy Law Firm for appellant.

Lauren S. Zurier, Assistant U.S. Attorney, with whom Sara
Miron Bloom, Acting U.S. Attorney, was on brief, for appellee.

June 2, 2026

**LYNCH**, **Circuit Judge**.  Jesus Maldonado appeals from his conviction after his unconditional guilty plea and his sentence. He pled guilty to three counts charged in his superseding indictment: attempting to entice a minor to engage in illicit sexual activity, in violation of 18 U.S.C. § 2422(b); attempting to transfer obscene material to a minor, in violation of 18 U.S.C. § 1470; and committing these offenses while a registered sex offender, in violation of 18 U.S.C. § 2260A.  The U.S. District Court imposed a sentence of 447 months' imprisonment, within Maldonado's Guidelines Sentencing Range ("GSR"), but also the maximum sentence within that GSR.

Maldonado brings three arguments on appeal: (1) that he was denied his Fifth Amendment right of due process based on alleged prosecutorial misconduct in the grand jury proceedings; (2) that he was denied his Sixth Amendment right to effective assistance of counsel; and (3) that his sentence is procedurally and substantively unreasonable.  We reject all three.  Maldonado's guilty plea has waived his attack on the grand jury proceedings. His ineffective assistance of counsel claim cannot be heard on direct appeal and so is dismissed without prejudice.  And Maldonado has waived his procedural reasonableness challenges to his sentence, so the only issue properly before us is the substantive reasonableness of his sentence.  We uphold his sentence as substantively reasonable.

- 2 -

As "this appeal follows a conviction via [the defendant's] guilty plea, we draw the facts from the plea colloquy and sentencing materials."  United States v. Vélez-Luciano, 814 F.3d 553, 556 (1st Cir. 2016) (citing United States v. Whitlow, 714 F.3d 41, 42 (1st Cir. 2013)).

In March 2019, Rhode Island State Police Detective Adam Houston conducted an online child exploitation sting investigation on the mobile social network site MocoSpace.  Houston, who was a member of the Internet Crimes Against Children Task Force, posed as "Jenni," a fictional resident of Warwick, Rhode Island, whose MocoSpace profile indicated she was 19 years old[1] and featured a profile picture of a female law enforcement officer age-regressed to appear to be a juvenile.  On March 13, 2019, Maldonado, who was 55 years old, sent a friend request to "Jenni" and initiated contact with a message complimenting her profile picture.  Houston accepted Maldonado's friend request, Maldonado provided a phone number, and Houston began texting Maldonado as "Jenni."  Over a two-day period, Maldonado and "Jenni" exchanged 714 text messages. Within 23 minutes of beginning to text with Maldonado, Houston informed Maldonado that "Jenni" was 13 years old.  In reply,

---

[1]  In the criminal complaint filed by Houston on March 20, 2019, Houston reported that he knew "from education and experience that juveniles often will report their age to be over eighteen (18) in order to gain access to a particular website or application."

Maldonado explicitly acknowledged "Jenni's" age was 13 and warned her about men online that would "try[] to abuse and play games" with girls, implying that he by contrast was trustworthy. At numerous other times during the text exchanges, Houston sent Maldonado messages that reinforced that "Jenni" was a 13-year-old girl, including by responding to Maldonado's request to describe herself with "[n]ot much to know. I'm 13, 7th grade"; telling Maldonado that she was texting from school and would not be able to chat later in the evening when her mom was home; and stating that she would not be able to drive for three more years. After "Jenni" told Maldonado that she was "kinda a loner" but had a best friend named Miranda, Maldonado responded by asking her to not "tell [her] friend for now."

Maldonado quickly initiated conversations about sex, telling "Jenni" after an hour of texting that he "will make love to you all night make you feel all my wife." Maldonado sent increasingly graphic text messages over the two days, describing the sexual acts he wanted to engage in with "Jenni" and asking her to do the same. Maldonado sent "Jenni" sexually explicit drawings, videos, and pictures of himself. He raised the prospect of his driving from Connecticut to Rhode Island to have sex with "Jenni" and asked her for details about where and when they could meet.

On the second day of texting, March 14, 2019, Maldonado began soliciting "Jenni" to send him nude pictures of her vagina from the school bathroom. Maldonado was dissatisfied with the photo that "Jenni" sent in reply, and he requested additional photos of "Jenni's" body on a bed. Toward the end of the exchange, Maldonado grew suspicious about "Jenni's" identity, texted that he was "scared I need to make sure who you are" and "[r]emember anybody find out about you and me it's going to be a problem," and requested a photo of "Jenni" making a specific gesture. Houston was unable to produce an age-regressed photo in time, so he sent a photo that was not age regressed. Maldonado responded, "[y]ou look older I don't know the pictures you look like a little girl and the other one here you look older," and stopped texting "Jenni" later that night. During the two-day period that he exchanged text messages with Houston as "Jenni," Maldonado was registered as a sex offender, a requirement of his past convictions for sexually assaulting minor females.

Houston filed a federal criminal complaint on March 20, 2019. On March 25, 2019, law enforcement officers arrested Maldonado in Connecticut pursuant to that warrant and searched Maldonado pursuant to search warrants for Maldonado's person, his home in Connecticut, and his digital devices. At the time of arrest, Maldonado possessed two phones, including the iPhone used to exchange messages with Houston as "Jenni." As a registered sex

- 5 -

offender, Maldonado could not have a cell phone without probation's approval, which he did not have for the iPhone at issue. He acknowledged the phone was in his name, but he claimed that it was also used by his friend "Tarzan," and he denied that he had used the phone to communicate with any juveniles online on MocoSpace or other sites. That denial was undercut by his admission that the photos sent to Houston as "Jenni" from the iPhone were of him, and by the fact that his face unlocked the iPhone via its facial recognition software and that the phone's passcode was his birthdate.

A federal grand jury in the District of Rhode Island indicted Maldonado on April 23, 2019, on three charges: attempting to entice a minor to engage in illicit sexual activity, in violation of 18 U.S.C. § 2422(b); attempting to transfer obscene material to a minor, in violation of 18 U.S.C. § 1470; and committing these offenses while a registered sex offender, in violation of 18 U.S.C. § 2260A. On April 29, 2019, Maldonado appeared before a U.S. Magistrate Judge to plead "not guilty" to the original indictment, and the judge ordered that Maldonado remain detained.

A federal grand jury for the District of Rhode Island returned a four-count superseding indictment on May 24, 2023.[2]

---

[2] Maldonado does not contest the government's assertion that "[g]iven the four-year lapse in time [between indictments], the

The superseding indictment charged Maldonado with the three offenses charged in the original indictment, as well as an additional charge under 18 U.S.C. § 2251(a) of attempting to sexually exploit a minor. In June 2023, Maldonado and the government negotiated a plea agreement, in which the government agreed to move to dismiss the added charge of attempting to sexually exploit a minor and to "not bring any additional charges based on the offense conduct in this case," in exchange for Maldonado's guilty plea to the remaining counts. As to sentencing, the plea agreement reserved the government's ability to argue for an upward departure and/or variance from the GSR and to recommend an imprisonment term greater than the higher of the statutory mandatory minimum term or the high end of the GSR. It reserved both Maldonado's and the government's ability to argue and present evidence on all matters affecting the GSR calculations. As to appeal, the plea agreement did not explicitly reserve any right for Maldonado to appeal adverse determinations on pretrial matters, making his guilty plea an unconditional one. Cf. Conditional Plea, Black's Law Dictionary (12th ed. 2024) ("A plea of guilty . . . entered with the court's approval and the

_____

original and superseding indictments could not have been issued by the same grand jury," citing Federal Rule of Criminal Procedure 6(g), which provides that a grand jury "may serve more than 18 months only if the court . . . extends the grand jury's service," and that "[a]n extension may be granted for no more than 6 months, except as otherwise provided by statute."

- 7 -

government's consent, the defendant reserving the right to appeal any adverse determinations on one or more pretrial motions"). On June 27, 2023, the district court accepted Maldonado's guilty plea at a change-of-plea hearing.

Maldonado's PSR, filed on December 21, 2023, calculated a GSR of 262 to 327 months of imprisonment for the first two counts of attempting to entice a minor to engage in illicit sexual activity, 18 U.S.C. § 2422(b), and attempting to transfer obscene material to a minor, 18 U.S.C. § 1470, and 120 months of imprisonment to run consecutively for committing those offenses while a registered sex offender, 18 U.S.C. § 2260A. Together, Maldonado's GSR for the three counts was 382 to 447 months of imprisonment.

On October 25, 2024, Maldonado moved for a downward variance from the GSR to the statutory minimum sentence of 240 months of imprisonment, arguing for a lesser sentence due to his "significant developmental adversity throughout his life," including an abusive childhood, mental health challenges, and a lack of education. The motion also argued that Maldonado "does not exhibit a high risk for recidivism," relying on Maldonado's September 26, 2024, clinical psychosexual evaluation, which he characterized as stating that he had only a "moderate" risk of reoffending.

In its sentencing memorandum filed October 26, 2024, the government recommended that Maldonado be sentenced to 447 months, the maximum sentence within Maldonado's GSR. The government argued that Maldonado's "more than twenty[-]year history of sexual assaults, interest in, and hands-on offenses with minors . . . all demonstrate that a lengthy sentence of incarceration is necessary to protect the public, incapacitate the [d]efendant from visiting future harm upon victims, and achieve the statutory purposes of sentencing."

The district court held Maldonado's sentencing hearing on November 12, 2024. It reviewed the GSR, to which neither side objected, and accepted that calculation of the sentencing range. During the prosecution's presentation of its sentencing recommendation, the court asked whether it was "in essence" seeking a life sentence, given that Maldonado would be nearly 100 years old at the end of a 447-month sentence, and the government replied in the affirmative. The district court then discussed the 18 U.S.C. § 3553 factors that it considered in imposing Maldonado's sentence, explicitly discussing the factors of public protection, the seriousness of the crime, Maldonado's personal and criminal history, and the clinical evaluation and Maldonado's risk of reoffending. The court acknowledged that Maldonado's childhood was "right up there with one of the worst." But that did not outweigh the other factors, the "most prominent of all of the

factors" being the need to "protect the public from further crimes by [Maldonado]." The court imposed a sentence of 447 months, explaining that it agreed with "the [g]overnment's recommendation of a guideline sentence, albeit at the high side," and that "a total of 447 months is the appropriate sentence, again, primarily to protect the public from any further crimes by [Maldonado] of such a serious nature."

## II.

## A.

Maldonado's unconditional guilty plea has waived any challenge to the grand jury proceedings as having been infected by prosecutorial overreach. In Tollett v. Henderson, 411 U.S. 258 (1973), the Supreme Court considered a federal habeas corpus petition of a state prisoner defendant who sought release by arguing that the indictment to which he pled guilty was returned by a grand jury that unconstitutionally excluded Black persons. Id. at 259-60. The Court, reversing the Sixth Circuit, held that a defendant's "guilty plea represents a break in the chain of events which has preceded it in the criminal process" and that, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged," "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id. at 267. Tollett held that

- 10 -

post-guilty plea, a defendant was limited to "attack[ing] the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was" constitutionally deficient. Id.

The Supreme Court reaffirmed Tollett's holding in Class v. United States, 583 U.S. 174 (2018), the Court's most recent case defining the challenges that defendants may bring to convictions after guilty pleas. In Class, the Court held that a guilty plea does not waive a federal criminal defendant's challenge to the constitutionality of the statute of conviction on direct appeal, id. at 178, as such a challenge goes to "the [g]overnment's power to criminalize [defendant's] (admitted) conduct" and was "consistent with [defendant's] knowing, voluntary, and intelligent admission [in his guilty plea] that he did what the indictment alleged," id. at 181. Significant to Maldonado's appeal, the Class Court contrasted these preserved claims of unconstitutionality of conviction statutes with claims of "case-related constitutional defects that 'occurred prior to the entry of the guilty plea,'" which the Court reaffirmed are barred under Tollett. Id. at 181 (quoting the discussion of Tollett in Blackledge v. Perry, 417 U.S. 21, 30 (1974)).

The First Circuit has "assiduously followed the letter and spirit of Tollett, holding with monotonous regularity that an unconditional guilty plea effectuates a waiver of any and all

- 11 -

independent non-jurisdictional lapses that may have marred the case's progress up to that point." United States v. Cordero, 42 F.3d 697, 699 (1st Cir. 1994); see also id. at 698 (holding defendant's guilty plea waived challenge to district court's Fourth Amendment suppression ruling where the guilty plea "did not expressly reserve any right of appeal with respect to the antecedent suppression ruling"); United States v. Kitts, 27 F.4th 777, 785 n.5 (1st Cir. 2022) (defendant's "unconditional guilty plea effectuate[d] a waiver" of defendant's challenge to the adequacy of the information concerning the elements of the offenses (quoting Cordero, 42 F.3d at 699)); United States v. Casiano-Santana, 1 F.4th 100, 101 (1st Cir. 2021) ("[I]t is long-settled law that a defendant who enters an unconditional guilty plea waives the right to bring claims regarding non-jurisdictional, pre-plea constitutional violations like the denial of a suppression motion at issue here."); United States v. Jackson, 118 F.4th 447, 455 (1st Cir. 2024) (rejecting defendant's attempt to extend the appeal right reserved in his conditional guilty plea, holding that "[v]irtually any and all nonjurisdictional issues not explicitly preserved for appeal in the conditional plea agreement . . . are deemed waived" (quoting United States v. Adams, 971 F.3d 22, 30 (1st Cir. 2020))). Maldonado's claim concerning the grand jury proceedings, which he

does not contest was a non-jurisdictional lapse, is thus considered waived under this line of First Circuit cases applying Tollett.[3]

We also note that Maldonado is simply incorrect when he asserts that the circuits are split as to whether challenges to grand jury proceedings are waived by a voluntary guilty plea, the issue here. Compare United States v. Dewberry, 936 F.3d 803, 805-07 (8th Cir. 2019) (holding that a guilty plea waives the right to bring a claim of improper denial of the right to self-representation), and United States v. Moussaoui, 591 F.3d

_____

[3] Maldonado's arguments concerning grand jury proceeding improprieties fail for another reason: all rest on his characterization of the transcript of the grand jury proceedings that led to the original indictment. Maldonado has not put into the record on appeal the transcript for the grand jury proceedings that led to the second, superseding indictment to which he pled guilty. As the Supreme Court has highlighted, prosecutorial errors in an initial indictment's grand jury proceedings can be cured in the grand jury proceedings for a superseding indictment. See Blackledge v. Perry, 417 U.S. 21, 30 (1974) (noting that a constitutionally flawed "indictment of the sort alleged in Tollett could have been 'cured' through a new indictment by a properly selected grand jury"); Class v. United States, 583 U.S. 174, 181 (2018) (discussing waived "case-related constitutional defects that 'occurred prior to the entry of the guilty plea,'" which "could . . . , for example, 'have been cured through a new indictment by a properly selected grand jury'" (quoting Blackledge, 417 U.S. at 30)). Maldonado has presented no evidence that the so-called "misconduct" he alleges occurred in the original grand jury proceedings was not so cured. Maldonado attempts to shift blame to the government for his failure to submit a transcript of the grand jury proceedings leading to the superseding indictment, claiming it is withholding evidence that it was obligated as a matter of law to produce under the Jencks Act, but, on the contrary, the Jencks Act does not require the government to volunteer a copy of the grand jury proceedings and there is no record that Maldonado sought the transcript. See 18 U.S.C. § 3500.

- 13 -

263, 279-80 (4th Cir. 2010) (same), and Gomez v. Berge, 434 F.3d 940, 943 (7th Cir. 2006) (same), and United States v. Montgomery, 529 F.2d 1404, 1407 (10th Cir. 1976) (same), with United States v. Hernandez, 203 F.3d 614, 626-27 (9th Cir. 2000) (holding an improper denial of the right to self-representation renders a subsequent guilty plea involuntary and so voids any guilty plea), overruled on other grounds by Indiana v. Edwards, 554 U.S. 164 (2008). Maldonado mischaracterizes United States v. Williams, 29 F.4th 1306 (11th Cir. 2022), as discussing a circuit split on this issue. The only circuit split Williams addresses relates to "the question of whether an improper denial of a defendant's . . . right to self-representation automatically renders a guilty plea involuntary," which is not relevant here. Id. at 1314.

**B.**

Next, we quickly dispense of Maldonado's claims of ineffective assistance of counsel, which are based on alleged failure by Maldonado's trial counsel to seek dismissal of his indictment and to object to the government's representations at sentencing. Such "Sixth Amendment attacks on counsel are rarely allowed on direct appeal because they require findings as to what happened and, as important, why counsel acted as [they] did -- information rarely developed in the existing record." United States v. Torres-Rosario, 447 F.3d 61, 64 (1st Cir. 2006). Accordingly, this court has "held with a regularity bordering on

- 14 -

the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions." United States v. Middleton, No. 24-1421, 2026 WL 1265732, at *10 (1st Cir. May 8, 2026) (quoting United States v. Reyes-Ballista, 146 F.4th 100, 113 (1st Cir. 2025)).  "[A]n individual seeking to press an ineffective assistance of counsel claim ordinarily must raise it in a collateral proceeding brought in the district court under 28 U.S.C. § 2255."  Id. (internal quotation marks omitted) (quoting Reyes-Ballista, 146 F.4th at 113).

We do the same here and decline to hear Maldonado's ineffective assistance of counsel claim.  The merits of the claim cannot be decided on the record before us, nor does that record show "significant indicia of ineffectiveness" that would justify "remand[ing] the claim to the district court for necessary fact-finding."  Kitts, 27 F.4th at 784 (second quoting United States v. Colón-Torres, 382 F.3d 76, 85 (1st Cir. 2004)).  Thus, we follow "our usual practice of requiring that" Maldonado's ineffective assistance "claim be first raised in post-conviction proceedings" and dismiss without prejudice.  Id.

## C.

Finally, Maldonado claims that his sentence was both procedurally and substantively unreasonable.  "Where challenges are to the procedural and substantive reasonableness of a sentence, our review process is bifurcated: we first determine whether the

- 15 -

sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Flores-Quiñones, 985 F.3d 128, 133 (1st Cir. 2021) (alteration and internal quotation marks omitted) (quoting United States v. Reyes-Torres, 979 F.3d 1, 6-7 (1st Cir. 2020)).

While "[p]reserved claims of sentencing error are generally reviewed for abuse of discretion," "when a defendant fails to contemporaneously object to the procedural reasonableness of a court's sentencing determination, we review for plain error." United States v. Sayer, 916 F.3d 32, 37 (1st Cir. 2019). The plain error standard requires a defendant to show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the [appellant's] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. (alteration in original) (quoting United States v. Márquez-García, 862 F.3d 143, 145 (1st Cir. 2017)).

Maldonado failed to raise his procedural objections before the sentencing court, so they are not preserved. We specifically note that he failed to preserve his argument that his sentence was procedurally unreasonable because the court relied on the prosecutor's representation that Maldonado had been "troll[ing] the internet to groom children," because he made no objection to that representation below. Even if he had, we doubt

this comment was error (much less plain error).  And in his appeal, "[a]lthough [Maldonado] argues that the district court has erred in numerous ways, he does not anywhere [in his sentencing argument] cite the four-factor [plain error] test or attempt to establish its latter three factors," "[e]ven after the government pointed this deficiency out."[4]  United States v. Pabon, 819 F.3d 26, 34 (1st Cir. 2016).  Thus, Maldonado "has waived review of his forfeited claims" of procedural unreasonableness.  Id. at 33.

We turn finally to Maldonado's challenge to the substantive reasonableness of the length of his sentence, which is the only issue properly before us.  Maldonado's substantive challenge to the length of his sentence is preserved by virtue of his motion to the district court for a downward variance to the statutory minimum sentence of 20 years.  See Holguin-Hernandez v. United States, 589 U.S. 169, 174-75 (2020) (holding that a "defendant who, by advocating for a particular sentence, communicates to the trial judge his view that a longer sentence is

---

[4]  In his reply brief, Maldonado asserted that "the [g]overnment incorrectly argues that [he] failed to preserve" the procedural sentencing challenges and that under Holguin-Hernandez v. United States, 589 U.S. 169 (2020), those challenges were preserved.  But Holguin-Hernandez, which concerned a defendant's preservation of substantive challenges to sentencing, has no bearing on the issue of preservation of procedural reasonableness challenges; the Holguin-Hernandez Court explicitly declined to "consider the[] matter[]" of "what is sufficient to preserve a claim that a trial court used improper procedures in arriving at its chosen sentence."  Id. at 175.

'greater than necessary' [under § 3553(a)] has thereby informed the court of the legal error at issue," such that "an appellate challenge to the substantive reasonableness of the sentence" is preserved).

"We review preserved challenges to the substantive reasonableness of a sentence for abuse of discretion." United States v. Casillas-Montero, 152 F.4th 306, 327 (1st Cir. 2025). "[W]e limit our review to the question of whether the sentence, in light of the totality of the circumstances, resides within the expansive universe of reasonable sentences," "recogniz[ing] that although '[a] sentencing court is under a mandate to consider a myriad of relevant factors, . . . the weighting of those factors is largely within the court's informed discretion.'" United States v. Contreras-Delgado, 913 F.3d 232, 239 (1st Cir. 2019) (omission and third alteration in original) (first quoting United States v. King, 741 F.3d 305, 308 (1st Cir. 2014); and then quoting United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011)). At bottom, "[f]or substantive reasonableness, the linchpin is 'a plausible sentencing rationale and a defensible result.'" Id. (quoting United States v. Pol-Flores, 644 F.3d 1, 4-5 (1st Cir. 2011)).

Maldonado's "challenged sentence [i]s within a properly calculated guideline range," so he "carries a particularly heavy burden to 'adduce fairly powerful mitigating reasons and persuade

- 18 -

us that the district judge was unreasonable in balancing . . . despite the latitude implicit in saying that a sentence must be reasonable.'" United States v. Candelario, 105 F.4th 20, 25 (1st Cir. 2024) (some internal quotation marks omitted) (quoting United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011)).  We have noted that "[i]n virtually all cases, a within-guidelines sentence will be a defensible outcome."  United States v. De Jesús-Torres, 64 F.4th 33, 42 (1st Cir. 2023).

Maldonado has offered no reasons, much less "fairly powerful" ones, to think the district court erred in choosing the highest sentence within Maldonado's GSR.  Candelario, 105 F.4th at 25 (quoting Madera-Ortiz, 637 F.3d at 30).  Rather, Maldonado's substantive unreasonableness arguments rest on misrepresentations of the record.  Maldonado argues that "[a] life sentence is out of proportion as punishment for one instance of sending sexual text messages to a fictitious minor" and "is per se substantively unreasonable."  But the district court did not impose the sentence based on only one instance.  The court based its decision also on the past series of extremely serious instances of Maldonado's sexual assault of children, "as serious a crime as we generally see here in Federal Court."  In light of this "history . . . of very disturbed criminal actions on [Maldonado's] part over a number of years," the district court concluded the 447-month sentence was "sufficient but not more than necessary [to] protect the public

- 19 -

from further crimes by [Maldonado]." That history, the district court thoroughly explained, included Maldonado's three prior convictions for sexual abuse of minors, his failure to register as a sex offender when required to do so, and the fact that Maldonado "w[as] offered . . . all of the services of . . . [p]robation . . . [and] whatever treatment was available [with his past convictions], and either it didn't work or [Maldonado] didn't use it," as Maldonado "went right back to it rather quickly." To us, Maldonado tries to emphasize that his latest conviction had been eleven years prior to this offense, but that figure severely misrepresents any gap in Maldonado's predatory actions, as Maldonado had only been released from prison on March 27, 2017, which was slightly less than two years before his messaging with "Jenni" on March 13 and 14, 2019. And while "Jenni" was fictious, the district court reasonably concluded that "there is little doubt after [its] review of all the records that if there was a 13-year-old at the other end of [the text exchange with Officer Houston], [she] would have been sexually abused."

Maldonado also argues that "the risk the defendant presented to the public was much less than the court perceived," claiming that the district court "outright rejected the defendant's submission of the expert's opinion [in the clinical psychosocial analysis], that the defendant would benefit from treatment and supervision and that he did not pose a risk of

recidivism any higher than the average defendant." The district court was not required to accept this characterization of Maldonado's evaluation which, instead, estimated his reoffending risk compared specifically to other adults convicted of sexual offenses, not a so-called "average defendant." Further, the sentencing transcript establishes the district court properly weighed Maldonado's psychosexual evaluation, calling it "insightful" and "incredibly helpful," while also reasonably questioning and discounting the evaluation's purported conclusions, especially in light of the failure of past supervision and treatment to stop Maldonado's predatory actions. The district court noted "that the [evaluation] doctor said that [Maldonado] can be supervised when history [of Maldonado's past recidivism despite probation services and supervision] tells us that [Maldonado] can't." The court reasonably stated that it "d[id not] take great comfort in the [evaluation's] distinction between moderate and high risk . . . [as a] moderate risk of reoffending scares the bejesus out of [it] on behalf of the kids."

Maldonado makes a close to frivolous argument[5] that it was "unnecessary and extreme" for the district court to take into

_____

[5] Maldonado compounds this with his argument that his sentence "violated the defendant's rights not to be subjected to an excessive sentence under the Eighth Amendment." (citing Solem v. Helm, 463 U.S. 277 (1983)). Unlike Maldonado's "claim that his sentence was unreasonably long," which is "adequately preserved" by his "argu[ment] for a more lenient sentence," this "specific,

account his prior convictions for sexually assaulting minors when devising his sentence, asserting that those prior convictions "were accounted for by" the consecutive ten-year sentence imposed under 18 U.S.C. § 2260A.  The existence of § 2260A as a standalone offense, however, does not impact the district court's latitude to weigh, heavily, Maldonado's criminal history of repeatedly sexually assaulting minors when devising the appropriate sentence for all three counts to which Maldonado pled guilty.

## III.

The sentence is **affirmed**.

---

substantive challenge[]" was "not raise[d] before the district court" and "thus [it is] unpreserved and plain error review applies."  United States v. Colón-De Jesús, 85 F.4th 15, 25 (1st Cir. 2023); see also id. (finding defendant's specific substantive error claims, made for the first time on appeal, that the district court allegedly "fail[ed] to provide a case-specific rationale for its sentencing decision and . . . plac[ed] undue weight on the seriousness of the offense" were unpreserved).  Maldonado did not argue the plain error standard in his opening brief, so this challenge is waived.  Id.